UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRYL WATSON,

        Plaintiff,                                No. 16-13770

v.                                             District Judge Linda V. Parker
                                                  Magistrate Judge R. Steven Whalen

CHARLES JAMSEN, ET AL.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

On October 21, 2016, Plaintiff Derryl Watson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical need in violation of the Eighth Amendment. Before the Court are motions for summary judgment filed by Defendant Sirena Landfair [Doc. #10] and Defendant Lana McCarthy [Doc. #21], which have been referred for Reports and Recommendations under 28 U.S.C. § 636(b)(1)(B). Because Plaintiff did not properly exhaust is administrative remedies as to these two Defendants before filing suit, I recommend that both motions be GRANTED, and that Defendants Landfair and McCarthy be DISMISSED WITHOUT PREJUDICE.

                              **I.    FACTS**

Plaintiff alleges that on March 10, 2016, he was transferred to the G. Robert Cotton Correctional Facility in Jackson, Michigan, to be evaluated for foot surgery. *Complaint* [Doc. #1], ¶ 12. He states that during intake on the same day, Defendant Boayue, a Physician's Assistant, cancelled an order for a foot basin and a hot water bottle for what she claimed were "security reasons." *Id*. ¶ 13. On March 18, 2016, Plaintiff was

seen offsite by Dr. Matthew Page, a podiatrist, *Id*. ¶ 14, and on April 19, 2016, he underwent extensive reconstructive foot surgery. *Id*. ¶ 15. Plaintiff alleges that upon his return to the prison, he was not seen or examined by any medical provider for over three weeks. *Id*. ¶ 17. On April 29, 2016, after experiencing pain in his left foot, and noticing that he had bled through the dressing, Plaintiff asked the housing staff to inform Healthcare. However, he was told that "Dr. Jamsen (Plaintiff's medical provider) said he had no need to see Plaintiff, that Plaintiff would see the surgeon early next week." *Id*. ¶ 19.

Plaintiff states that on May 3, 2016, he again informed housing staff that he was in extreme pain. After a significant wait, he spoke with P.A. Boayue, telling her that he needed to see a medical provider regarding his bleeding and his pain. *Id*. ¶ 21. Boayue refused that request, told Plaintiff that "Podiatry had control over Plaintiff's case," and told him to take Motrin. *Id*. ¶ 22.

Two days later, on May 5, 2016, Plaintiff was seen by Nurse Vickie Carlson, who examined his foot and then left to consult with Dr. Jamsen. Plaintiff alleges that Carlson told her that "despite literally begging Dr. Jamsen to come and take a look at Plaintiff's foot," Jamsen refused, saying that Plaintiff would see the surgeon the next day. *Id*. ¶ 23. Plaintiff in fact met with Dr. Page, the podiatrist, the next day. *Id*. ¶ 24. Dr. Page cleaned and re-dressed the foot, and prescribed antibiotics. *Id*. ¶ 25. On his return to the prison, Plaintiff was seen by Wendy S. Liu, a Nurse Practitioner, who wrote all new orders per the surgeon's instructions. *Id*. ¶ 27. Plaintiff alleges that because his infection would not abate, a second surgery became necessary. *Id*. ¶ 28.

Plaintiff states that Defendant McCarthy was the Health Unit Manager at the Cotton Facility, *id*, ¶ 8, and that Defendant Landfair was the Nurse Supervisor at the

Cotton Facility, *id*. ¶ 9. Plaintiff's sole allegations against Defendants McCarthy and Landfair are contained in ¶ 32, which states:

> "Defendants McCarthy and Landfair violated Plaintiff's constitutionally protected right to be free from Cruel and Unusual Punishment to Plaintiff's serious medical needs by instituting policies and practices contrary to the Department's healthcare rules, policies and procedures; canceling valid medical details for non medical reasons, and a practice of not seeing prisoners coming from off-site medical appointments to the Plaintiff's detriment of his serious medical needs after having major surgery, which caused an serious infection in Plaintiff's foot and necessitated a second surgery of Plaintiff's foot."

## II. LEGAL PRINCIPLES REGARDING EXHAUSTION

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

A dismissal for failure to exhaust is without prejudice. *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).

### III. DISCUSSION

MDOC Policy Directive (PD) 03.02.130 provides prison inmates a detailed procedure for bringing forward complaints.[1] This grievance procedure consists of four acts an inmate must undertake before seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

PD 03.02.130 § R provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." (Emphasis in original). To constitute proper exhaustion under MDOC policy, a specific defendant must be identified at Step I of the process. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), *abrogated on other grounds* by *Jones v. Bock*, 549 U.S. 199 (2007). ("[W]e understand [MDOC] policies to preclude administrative exhaustion of a claim against a

---

[1] PD 03.02.130 is reproduced in Exhibit 1 to Defendant Landfair's Motion [Doc. #10].

prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process."). In addition, a Michigan prisoner must appeal a grievance through Step III of the procedure. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier v. Laurel County, KY.*, 636 F.3d 218, 224 (6th Cir. 2011).

The gravamen of Plaintiff's complaint is that he was denied timely and adequate medical care following his foot surgery. Plaintiff filed two grievances regarding that complaint, both of which were taken through Step III of the MDOC grievance procedure. Both are appended to Defendant Lanfair's motion [Doc. #10] as Exhibit 2. In Grievance No. JCF 16050835, Plaintiff stated at Step I that Defendant Mary Boayue (who has not joined in the present motions) told him on May 3, 2016 that he would not be seen at Healthcare because his case was being handled by Podiatry. Plaintiff stated that he had not been seen since his surgery on April 19, 2016. Plaintiff stated at Step I that "[t]his grievance is on PA Boayue and Jamson and any and all JCF medical staff involved in these violations that are unavailable to name at this time." Neither McCarthy nor Landfair are named in the grievance, nor does the grievance allege that any supervisory personnel instituted a policy of denying treatment. Fairly read, the grievance alleges that *treating* medical providers, specifically Boayue and Jamson, were violating MDOC policy.

In Grievance No. JCF 16050807, Plaintiff again claimed that he had not received timely post-surgical medical care, and at Step I named "PA Jamson, HUM McCarthy and any and all medical staff unavailable to name." While he stated that PA Jamson refused to see him, he did state what Defendant McCarthy did, nor did he allege that she instituted

any policy to deny medical treatment to inmates returning from surgery. He did not name Defendant Landfair.

Because Plaintiff did not name Defendant Landfair in either of these grievances, he has run afoul of PD 03.02.130 §R, which requires that a person being grieved must be named at Step I. There is a limited exception to this rule in certain situations where an inmate does not know the name of the person being grieved. *See e.g., Merriweather v. Zamora,* 2006 WL 2711809, *9 (E.D.Mich.2006), citing *Thomas v. Woolum,* 337 F.3d 720, 734 (6th Cir.2003), *abrogated on other grounds* by *Woodford v. Ngo* ("[A]n inmate need not identify each officer by name when the identities of the particular officers are unknown."). However, an inmate must still describe the person or persons against whom he has a complaint with sufficient information "to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court." *D'Andrea v. Rodriguez*, 2006 WL 1997385, at *2 (W.D. Mich. 2006), citing *Thomas*. Here, Plaintiff's very general statement that he is grieving "any and all medical staff" does not satisfy the requirements of the Policy Directive or *Thomas*.

Moreover, PD 03.02.130 §R requires an inmate to include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)." (Emphasis in original). *See Vandiver v. Martin*, 48 Fed. App'x 517, 2002 WL 31166925, at *2 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to *the specific issues raised*, and the specific individuals mentioned, in his grievance"). (Emphasis added). Plaintiff did not only not name Defendant Landfair, and did not state that a Nurse Supervisor was being grieved, but did not offer any *facts* to support a complaint that any supervisory personnel were involved in formulating or pursuing a policy of denying treatment to post-surgical inmates, or indeed that any such

policy was being pursued.

Plaintiff's grievance suffers from a similar deficiency as to Defendant McCarthy. Although her name appears at Step I of Grievance No. JCF 16050807, there is no factual description of her position as Health Unit Manager and no factual allegations as to her role in what happened. There is no factual allegation of supervisory involvement in Plaintiff's medical treatment. The grievance contains no allegations at all that the inadequacy of Plaintiff's medical treatment was linked to any policy formulated by McCarthy, Landfair, or anyone else. Rather, Plaintiff alleged that his mistreatment was due to a *violation* of MDOC policy.

Because Plaintiff did not properly exhaust his claims against McCarthy and Landfair, these Plaintiffs should be dismissed without prejudice.

### IV. CONCLUSION

I recommend that Defendant Landfair's Motion for Summary Judgment [Doc. #10] and Defendant McCarthy's Motion for Summary Judgment [Doc. #21] both be GRANTED, and that these Defendants be DISMISSED WITHOUT PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.

1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 11, 2017  s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

**I hereby certify on August 11, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants August 11, 2017.**

s/Carolyn M. Ciesla
**Case Manager for the
Honorable R. Steven Whalen**