UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRYL WATSON,

      Plaintiff,                                   No. 16-13770

v.                                              District Judge Linda V. Parker
                                                 Magistrate Judge R. Steven Whalen

CHARLES JAMSEN, ET AL.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

On October 21, 2016, Plaintiff Derryl Watson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical need in violation of the Eighth Amendment. Before the Court is his motion for preliminary injunctive relief [Doc. #43], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

### I.   FACTS

Plaintiff alleges that on March 10, 2016, he was transferred to the G. Robert Cotton Correctional Facility in Jackson, Michigan, to be evaluated for foot surgery. *Complaint* [Doc. #1], ¶ 12. He states that during intake on the same day, Defendant

-1-

Boayue, a Physician's Assistant, cancelled an order for a foot basin and a hot water bottle for what she claimed were "security reasons." *Id.* ¶ 13. On March 18, 2016, Plaintiff was seen offsite by Dr. Matthew Page, a podiatrist, *Id.* ¶ 14, and on April 19, 2016, he underwent extensive reconstructive foot surgery. *Id.* ¶ 15. Plaintiff alleges that upon his return to the prison, he was not seen or examined by any medical provider for over three weeks. *Id.* ¶ 17. On April 29, 2016, after experiencing pain in his left foot, and noticing that he had bled through the dressing, Plaintiff asked the housing staff to inform Healthcare. However, he was told that "Dr. Jamsen (Plaintiff's medical provider) said he had no need to see Plaintiff, that Plaintiff would see the surgeon early next week." *Id.* ¶ 19.

Plaintiff states that on May 3, 2016, he again informed housing staff that he was in extreme pain. After a significant wait, he spoke with P.A. Boayue, telling her that he needed to see a medical provider regarding his bleeding and his pain. *Id.* ¶ 21. Boayue refused that request, told Plaintiff that "Podiatry had control over Plaintiff's case," and told him to take Motrin. *Id.* ¶ 22.

Two days later, on May 5, 2016, Plaintiff was seen by Nurse Vickie Carlson, who examined his foot and then left to consult with Dr. Jamsen. Plaintiff alleges that Carlson told her that "despite literally begging Dr. Jamsen to come and take a look at Plaintiff's foot," Jamsen refused, saying that Plaintiff would see the surgeon the next day. *Id.* ¶ 23. Plaintiff in fact met with Dr. Page, the podiatrist, the next day. *Id.* ¶ 24. Dr. Page cleaned

-2-

and re-dressed the foot, and prescribed antibiotics. *Id*. ¶ 25. On his return to the prison, Plaintiff was seen by Wendy S. Liu, a Nurse Practitioner, who wrote all new orders per the surgeon's instructions. *Id*. ¶ 27. Plaintiff alleges that because his infection would not abate, a second surgery became necessary. *Id*. ¶ 28.

In his motion for injunctive relief, Plaintiff claims that Dr. Keith Pappendick, an Officer of Corizon, has denied all of his requests for medical treatment.[1] More specifically, he alleges that he has not been provided with orthopedic shoes, which he considers a medical necessity. He also states that he suffers from "acute dupeytren contracture," and requires "orthopedic hand surgery to relieve his condition and pain."

## II. STANDARD OF REVIEW

Generally, in determining whether to grant injunctive relief, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "These factors are not prerequisites, but are factors

---

[1] On May 24, 2018, I permitted Plaintiff to supplement his complaint to add Dr. Pappendick as a Defendant [Doc. #62].

that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiffs bear the burden of demonstrating their entitlement to a preliminary injunction, and their burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet , supra,* at 573. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiffs may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate their entitlement to injunctive relief.

### III. DISCUSSION

#### A. Likelihood of Success

This motion, as well as the corresponding portion of the complaint, involves Plaintiff's allegations of deliberate indifference to his serious medical conditions. Under the Eighth and Fourteenth Amendments, prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v.*

*Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Plaintiff's complaint shows that despite his disagreement with the extent and efficacy of his treatment, he has in fact received some level of medical attention. But differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Estelle*, 429 U.S. at 105-106. *See also Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976)("whre a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reuctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). This factor weighs against granting injunctive relief directing the medical treatment that Plaintiff prefers.

### B. Irreparable Harm

Again, this is not a case where the Plaintiff has received *no* medical treatment, and to the extent that he argues that the Defendants have not been sufficiently attentive to his needs, or that the treatment has not been efficacious, he has stated no more than a personal disagreement with his doctors. He has not shown, beyond speculation, that he will be irreparably harmed if the Court does not grant injunctive relief. Injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur.

*Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

### C. Harm to Others / Public Interest

These last two factors pertinent to injunctive relief may be viewed together. In this motion, as well as in his complaint, the Plaintiff appears to ask that the Defendants be ordered to undertake specific medical actions. The MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care, and in contracting with licensed medical providers such as Corizon. The public has an interest both in ensuring that prison inmates receive medical care, and also in having a well-regulated and operated prison system. Corizon and its medical personnel, including Dr. Pappendick, have an interest in practicing medicine based on their best medical judgment and on the needs of their patients. By granting the requested injunctive relief in this case, the Court would be in the untenable position of second-guessing and countermanding Defendants' medical decisions.

In conclusion, a balancing of the factors weighs substantially against the grant of preliminary injunctive relief.

### IV. CONCLUSION

For these reasons, I recommend that Plaintiff's motion for preliminary injunction [Doc. #43] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled ad "Response to Objection #1," "Response to Objection #2," etc.

        s/ R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2018

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on June 25, 2018, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen