UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRYL WATSON,

    Plaintiff,                                No. 16-13770

v.                                         District Judge Linda V. Parker
                                           Magistrate Judge R. Steven Whalen

CHARLES JAMSEN, ET AL.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

On October 21, 2016, Plaintiff Derryl Watson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical need in violation of the Eighth Amendment. Before the Court is a motion for summary judgment filed by Defendants Dr. Charles Jamsen and Physician's Assistant Mary Boayue [Doc. #79], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

**I.   FACTS**

Plaintiff alleges that on March 10, 2016, he was transferred to the G. Robert Cotton Correctional Facility in Jackson, Michigan, to be evaluated for foot surgery.

-1-

*Complaint* [Doc. #1], ¶ 12.  He states that during intake on the same day, Defendant Boayue, a Physician's Assistant ("P.A."), cancelled an order for a foot basin and a hot water bottle for what she claimed were "security reasons." *Id*. ¶ 13.  On March 18, 2016, Plaintiff was seen offsite by Dr. Matthew Page, a podiatrist,  *Id*. ¶ 14, and on April 19, 2016, he underwent extensive reconstructive foot surgery. *Id*. ¶ 15.  Plaintiff alleges that upon his return to the prison, he was not seen or examined by any medical provider for over three weeks.  *Id*. ¶ 17.  On April 29, 2016, after experiencing pain in his left foot, and noticing that he had bled through the dressing, Plaintiff asked the housing staff to inform Healthcare.  However, he was told that "Dr. Jamsen (Plaintiff's medical provider) said he had no need to see Plaintiff, that Plaintiff would see the surgeon early next week." *Id*. ¶ 19.

    Plaintiff states that on May 3, 2016, he again informed housing staff that he was in extreme pain.  After a significant wait, he spoke with P.A. Boayue, telling her that he needed to see a medical provider regarding his bleeding and his pain.  *Id*. ¶ 21.  Boayue refused that request, told Plaintiff that "Podiatry had control over Plaintiff's case," and told him to take Motrin.  *Id*. ¶ 22.

    Two days later, on May 5, 2016, Plaintiff was seen by Nurse Vickie Carlson, who examined his foot and then left to consult with Dr. Jamsen.  Plaintiff alleges that Carlson told her that "despite literally begging Dr. Jamsen to come and take a look at Plaintiff's foot," Jamsen refused, saying that Plaintiff would see the surgeon the next day.  *Id*. ¶ 23.

Plaintiff in fact met with Dr. Page, the podiatrist, the next day. *Id*. ¶ 24.  Dr. Page cleaned and re-dressed the foot, and prescribed antibiotics. *Id*. ¶ 25.  On his return to the prison, Plaintiff was seen by Wendy S. Liu, a Nurse Practitioner, who wrote all new orders per the surgeon's instructions. *Id*. ¶ 27.  Plaintiff alleges that because his infection would not abate, a second surgery became necessary. *Id*. ¶ 28.

Attached to Defendants' motion [Doc. #79] as Exhibit A is the affidavit of Charles Jamsen, M.D.  He states that on March 21, 2016, he submitted a consultation request on behalf of Plaintiff for a bunionectomy and hammer toe repair surgery. On March 30, 2016, he informed Plaintiff that he had been approved for surgery. *Jamsen Affidavit*, ¶¶ 3-4.  On April 20, 2016, he submitted a request for a post-surgery follow-up, which was scheduled for May 6, 2016 with Dr. Page. *Id*. ¶¶ 5-6.  In the meantime, Plaintiff was seen by Vicki Carlson, RN.  Dr. Jamsen read the post-operative instructions, and told RN Carlson to not change Plaintiff's dressing until he was seen by Dr. Page, and ordered that Plaintiff would continue with Naprosyn and Tylenol for pain. *Id*. ¶¶ 6-7.  On May 9, Dr. Jamsen consulted with Dr. Page, and requested that Plaintiff have a follow-up appointment with Dr. Page. That request was granted, and Dr. Jamsen prescribed 50 mg of Ultram. *Id*. ¶ 8.  On May 13, per Dr. Page's instructions, he requested a podiatry follow-up in two weeks, and extended Plaintiff's wound care orders and medications. *Id*. ¶ 9.

On May 23, 2016, Plaintiff was seen by an RN and a LPN.  Dr. Jansen ordered

more Ultram and on May 31scheduled another podiatry appointment. On the same day, he updated Plaintiff's chart and discontinued a wheelchair detail, noting that Plaintiff could use crutches. He also prescribed Ultram and Eucerin cream. *Id*. ¶¶ 12-14. On June 9, he reviewed and implemented orders from Dr. Page, noting that Plaintiff was continuing the use of antibiotics. *Id*. ¶ 15. Dr. Page saw Plaintiff on June 17, noting a left foot open wound with mild swelling. He ordered wound care with Aquacel, but saw no sign of infection. He ordered a detail for no prolonged standing. *Id*. ¶ 17. Nevertheless, on or about June 20, he prescribed a seven-day course of antibiotics. *Id*. ¶ 18.

Dr. Jamsen again saw the Plaintiff on July 1, 2016, noting that his foot was healing and he no longer required crutches. Plaintiff was advised to continue his course of antibiotics. *Id*. ¶ 22. Dr. Jamsen saw Plaintiff again on July 12 and July 13, for complaints of swelling and increased pain. He ordered Clindamycin and Cipro, as well as a follow-up visit in around 10 days. On July 15, he ordered generic Eucerin lotion and requested a follow-up podiatry appointment. *Id*. ¶ 23-25. On July 20, Dr. Jamsen saw Plaintiff for a chronic care visit. He observed no edema or cyanosis, and instructed Plaintiff to continue on antibiotics. *Id*. ¶ 28. On August 18, he ordered Tramadol for Plaintiff and scheduled a follow-up appointment for the end of August. *Id*. ¶ 29. He saw Plaintiff on that date, and although the incision on Plaintiff's foot seemed to be healing well, he continued the order for antibiotics. *Id*. ¶ 30.

Between September 8, 2016 and February 9, 2016, Dr. Jamsen saw Plaintiff twice,

monitored his progress notes, and ordered orthotic shoes, which Plaintiff received on November 10, 2016. *Id*. ¶¶ 31-38. On February 13, 2017, after reviewing an alternative treatment plan from Dr. Paperdick, Dr. Jamsen ordered x-rays of Plaintiff's left foot. The x-rays showed "healed postoperative changes of a bunionectomy involving the left great toe with anatomic alignment and apposition." *Id* ¶¶ 39-40. On April 9, 2017, Dr. Jamsen saw Plaintiff for a chronic care visit where Plaintiff complained of black hard spots on his toes. Dr. Jamsen photographed the spots and ordered Eurcerin cream. He had no further involvement with Plaintiff's foot care through March 6, 2018. *Id*. ¶¶ 42-43.

Defendants' Exhibit B is the affidavit of P.A. Mary Boayue. She states that on March 10, 2016, she ordered Plaintiff's hot water bottle and water basis details discontinued per custody reasons, i.e., they were not permitted under MDOC regulations. *Boayue Affidavit*, ¶ 3. On April 19, 2016, Plaintiff underwent an outpatient bunionectomy at Allegiance Hospital with Dr. Page, and on his return, PA Boayue conducted a chart review and ordered Naprosyn and Narco, as recommended, as well as ordering an ice detail, crutches, and a extra pillow to elevate Plaintiff's foot. *Id*. ¶ 4. Plaintiff's discharge instructions indicated "Do not remove outer dressing until follow-up appointment." *Id*. ¶ 5. P.A. Bouaye had no further involvement with Plaintiff's foot care after April 19, 2016. *Id*. ¶ 6.

Defendant's Exhibit D is the affidavit of Dr. Mathew A. Page, DPM, who performed Plaintiff's outpatient bunionectomy and hammer toe repair surgery on April

19, 2016. *Page Affidavit*, ¶ 4. He saw Plaintiff for follow-up visits on May 12, May 27, June 3 and July 8, 2016. *Id*. ¶ 7. He saw Plaintiff again on August 5, 2016, and upon reviewing x-rays he notice a screw loosening in Plaintiff's hardware, which raised a suspicion that the hardware might be infected. He performed an incision and drainage and hardware removal procedure on August 16, 2016. *Id*. ¶¶ 8-10. On September 9, 2016, he saw Plaintiff for a follow-up visit, and it appeared that with post-surgical treatment, including wound care and antibiotics, he was healing well. *Id*. ¶ 11. Dr. Page states that he does not attribute Plaintiff's infected hardware to a lack of dressing change between April 19 and May 6, 2016, "because it is unknown whether Mr. Watson's hardware would have been infected anyway if his dressing had been changed before his initial follow-up visit." *Id*. ¶ 14. He states, "With any orthopedic surgery, there is a risk of infected hardware even with proper surgical techniques and proper follow-up care." *Id*. ¶ 13.

The affidavits of Dr. Jamsen, Dr. Page, and PA Boayue are corroborated by over 500 pages of Plaintiff's medical records submitted under seal as Defendants' Exhibit C.

In his response to Defendants' motion [Doc. #83], Plaintiff states, "From April 19, 2016 through May 5, 2016, I went from having no wound care, to after May 6, 2016 for the next couple of months to having wound care daily!" *Plaintiff's Response*, ¶ 14. Plaintiff also attached portions of his medical records, including a nurse's note of May 10, 2016, stating, "Inmate to HC for wound care per Dr. Jamsen; he spoke W/ Dr. Page and

the dressing isn't to be changed here at this time. [H]e will change it in his office at the return visit. Dr. Jamsen does want a daily check of dressing however, to be sure there is no drainage leaking through. [T]he dressing is dry and intact at this time. Inmate left HC in stable condition." *Plaintiff's Response*, Exhibit 1, Pg. ID 1148.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary

judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103-104. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id*. at 15. "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)(citing *Farmer*, 511 U.S. at 834). Under the subjective component, "the

plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702.

"[W]hen an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart,* 894 F.3d at 737 (quoting *Miller v. Calhoun Cty*., 408 F.3d 803, 819 (6th Cir. 2005), in turn quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ). In such case, "[t]he plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id*. at 738 (quoting *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) ).

In terms of the subjective prong of a deliberate indifference analysis, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble*, 97 429 U.S. at 107 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition"). To make out a claim of deliberate

indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 107).

Applying these principles to the present case, Plaintiff's foot condition, which required surgery and extensive follow-up treatment, can be considered a serious medical condition. However, because Plaintiff did receive ongoing treatment, to show the objective component he must show that his care was so grossly incompetent as to shock the conscience. *Rhinehart,* 894 F.3d at 737. Moreover, he must produce verifying medical evidence that establishes the "detrimental effect" of the inadequate treatment. *Id*. at 738. While Plaintiff claims that his post-surgical infection and other complications were the result of inadequate care, i.e., Defendants' failure to change his dressings between April 29 and May 6, 2016, and although he complained about his treatment, there is no medical evidence that shows any causal relationship between the allegedly inadequate treatment and any subsequent complications. To the contrary, Dr. Page, who performed the surgery as well as follow-up care, states in his affidavit that he does not attribute Plaintiff's infected hardware to a lack of dressing change between April 19 and May 6, 2016, "because it is unknown whether Mr. Watson's hardware would have been infected anyway if his dressing had been changed before his initial follow-up visit." *Page*

*Affidavit*. ¶ 14.  He further states, "With any orthopedic surgery, there is a risk of infected hardware even with proper surgical techniques and proper follow-up care."  *Id*. ¶ 13.

Plaintiff has also failed to establish the subjective component. The affidavits of Dr. Jamsen, Dr. Page, and P.A. Boayue, corroborated by over 500 pages of medical records, show that Plaintiff received extensive medical attention, including consultations with doctors and nurses, surgery, x-rays, and prescriptions, including antibiotics and pain medications.  It is true that the hardware that Dr. Page implanted became infected, and I do not doubt that Plaintiff suffered discomfort and stress.  It might even be possible that some different course of treatment would have been more effective. But a medical provider's "errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Rhinehart*, 894 F.3d at 738 (citing *Estelle*, 429 U.S. at 107–08).  Further, "[a] doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Id*. (citing *Farmer*, 511 U.S. at 844).

I am not unsympathetic to Plaintiff's medical problems, and his ongoing difficulties have no doubt been frustrating.  However, he has not shown anything more than his disagreement with the treatment provided, or at most, that he received negligent treatment. But he has not met the more demanding standard of deliberate indifference, and on these facts, no rational trier of fact could find otherwise.  The Court should therefore grant summary judgment to these Defendants.

### IV. CONCLUSION

I recommend that Defendants Jamsen and Boayue's Motion for Summary Judgment [Doc. #79] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

           s/R. Steven Whalen
           R. STEVEN WHALEN
           UNITED STATES MAGISTRATE JUDGE

Dated: August 10, 2019