IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DERRYL WATSON, #148946

    Plaintiff,

v.

JAMSEN et al

    Defendants,

Case No.: 2:16-cv-13770
District Judge: Linda V. Parker
Magistrate Judge: Anthony P. Patti

| THE LAW OFFICE OF KEITH ALTMAN | CHAPMAN LAW GROUP |
|---|---|
| Keith Altman (P81702) | Ronald W. Chapman Sr., M.P.A., LL.M (P37603) |
| Attorney for Plaintiff | Nicholas B. Pillow (P83927) |
| 33228 West 12 Mile Rd., Suite 375 | Attorneys for Charles Jamsen, M.D., Keith Papendick, M.D. and Mary Boayue, P.A. |
| Farmington Hills, MI 48331 | 1441 West Long Lake Rd., Suite 310 |
| (516) 456-5885 | Troy, MI 48098 |
| kaltman@lawampmmt.com | (248) 644-6326 |
| | rchapman@chapmanlawgroup.com |
| RADNER LAW GROUP, PLLC | npillow@chapmanlawgroup.com |
| Solomon M. Radner (P73653) | |
| Co-Counsel for Plaintiff | |
| 17515 W. Nine Mile Rd., Ste. 1175 | |
| Southfield, MI 48075 | |
| (313) 355-3425 | |
| solomon@radnerlawgroup.com | |

**DEFENDANTS CHARLES JAMSEN, M.D.; MARY BOAYUE, P.A.; AND KEITH PAPENDICK, M.D.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO PRECLUDE ARGUMENT THAT FAILURE TO CHANGE BANDAGES BETWEEN APRIL 19, 2016 AND MAY 5, 2016 LED TO EXCESSIVE PAIN AND BLEEDING, AS UNSUPPORTED BY EXPERT TESTIMONY (ECF NO. 138)**

This issue comes before the Court on Defendants' Motion in Limine to preclude argument of excessive pain and bleeding as unsupported by expert testimony. Plaintiff has alleged that Defendants were deliberately indifferent to his serious medical needs between April 19, 2016 and May 5, 2016, by failing to provide him bandage changes every three (3) days, leading to pain, bleeding, and a malodorous foot. Plaintiff's medical records form the MDOC, however, make clear that beginning with his follow-up appointment with podiatrist Dr. Page on May 6, 2016, Plaintiff's bandages were changed in accordance with Dr. Page's recommendations. Thus, what Plaintiff is really alleging is a delay in treatment from April 19 2016 through May 5, 2016 relating the changing of his bandage.

Under the holding of *Phillips v. Tangilag* 14 F. 4th 524 (2021), where a Plaintiff is alleging a delay in care, they must establish the detrimental effect of the delay in care through expert testimony. *Phillips*, 14 F. 4th at 538-539 (2021).

Plaintiff has no medical expert to speak to the detrimental effect of the failure to change Mr. Watson's bandages between April 19, 2016, and May 5, 2016, and therefore cannot possibly carry his burden of proof under the holding of *Phillips*. In response to this position, Plaintiff erroneously argues that applying the holding of *Phillips* would be an impermissible retroactive application of law.

First, putting aside for the time being Plaintiff's improper application of the retroactivity factors, Plaintiff cannot genuinely argue that applying *Phillips* would

be a retroactive application of law, as Plaintiff's counsel has had nine (9) months, from September 17, 2021 until present, to seek to comply with *Phillips*, and was clearly aware of the *Phillips* holding as exemplified by the arguments made in *Estate of Richie Majors v. Gerlach et al*, Case No. 2:16-cv-13672. In that case, the plaintiff was also represented by Plaintiff's counsel in this matter and sought to use the *Phillips* holding to reopen discovery. (*See* **Exhibit A**). There, specifically addressing the retroactivity of the *Phillips* holding, Judge Mark Goldsmith wrote:

> Further, Plaintiffs are unclear in articulating how this "brand new caselaw" changes the law that controls their case. By Plaintiffs' own interpretation, **the controlling law that preceded Phillips "typically" required an expert for deliberate indifference claims, and after *Phillips*, such claims "likely" require an expert**. Plaintiffs also submit that "the Philips court itself seems to acknowledge that a case may not necessarily need an expert if it is so clearly obvious that even a layman can see the likely result of the defendants' actions." **This characterization of the holding in *Phillips* obscures any understanding as to how Plaintiffs believed that they were operating under one standard before the Sixth Circuit decision and a new standard after the Sixth Circuit decision**—a position further belied by their repeated requests to shoehorn expert discovery back into the schedule at every stage of the case.

(**Exhibit A, p. 4-5**) (internal citations omitted). (emphasis added).

Additionally, at the time *Phillips* came down Plaintiff still had the opportunity to conduct further discovery in this matter and chose to voluntarily wave any further

3

discovery at a status conference on December 15, 2021, three (3) months after *Phillips* was decided. (**ECF No. 128, PageID.1330**).

Second, as shown by Judge Goldsmith's ruling discussed above, Plaintiff does not even make it past the initial threshold analysis for nonretroactive application of new case law. As discussed in Plaintiff's response, the initial threshold question is "whether the principle of law newly established either overrules clear past precedent on which litigants have relied, or whether the issue decided is one of first impression whose resolution was not clearly overshadowed [*sic*]." (**ECF No. 143, PageID.1494**); *Lowary v. Lexington Local Bd of Ed*, 704 F. Supp. 1476, 1478 (ND Ohio, 1988). As clearly explained by the 6th Circuit in the *Phillips* opinion, the Court's holding was merely a continuation and clarification of already existing law.

> For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony. ***See Rhinehart*, 894 F.3d at 737, 740-43; *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)**. This medical-evidence requirement makes sense in a world in which the Supreme Court looks to the "evolving standards of decency" to determine the Eighth Amendment's standards. ***Estelle*, 429 U.S. at 106**. Even for garden-variety negligence claims, "[t]he overwhelming weight of authority supports the view that ordinarily expert evidence is essential to support an action for malpractice against a physician or surgeon." H.H. Henry, Annotation, Necessity of Expert Evidence to Support an Action for Malpractice Against a Physician or Surgeon, 81 A.L.R. 2d 597, § 2 (1962 & Supp. 2021) (collecting cases). So a medical-evidence requirement sits comfortably within society's "decency" standards. And it would be odd if a prisoner

> could prove an Eighth Amendment claim more easily than an ordinary individual could prove a malpractice claim.

*Phillips,* 14 F. 4th at 535 (2021) (emphasis added).

Thus, by its own reasoning, the 6th Circuit clearly established that *Phillips* is merely a continuation of the holdings in *Rhinehart*, *Napier*, and *Estelle*, and cannot be said to be either an overruling of a clearly established law or an issue of first impression not foreshadowed in prior case law. *See Lowary* 704 F. Supp. at 1478 (ND Ohio, 1988). Plaintiff himself on Page 6 of his reply brief acknowledges that clear past precedent in the 6th Circuit discussed medical testimony being required to establish enough medical evidence under the holding in *Reinhart.* (**ECF No. 144, PageID.1504**).

Next, Plaintiff argues that medical expert testimony is not required under the holding in *Phillips* because an average lay person can determine if pain and bleeding are serious medical conditions. This argument completely misses the point. The question for the jury on damages is not whether Plaintiff suffered pain or bleeding following his bunionectomy surgery, some pain and bleeding are obviously to be expected following any surgery. Rather the question for the jury is, **whether Plaintiff suffered excessive pain and bleeding beyond what would be expected with this type of surgery as a result of the lack of dressing change**. Lay jurors do not have the medical knowledge or expertise to assess what amount of pain is to be expected and what is excessive. Accordingly, expert testimony is needed to assist

the jury in determining whether there is a causal link between the lack of dressing change and Plaintiff's level of pain and bleeding, or whether the pain and bleeding experience was consistent with what was to be expected following a bunionectomy.

Finally, Plaintiff, through dubious logic, argues that if an expert is required under the holding of *Phillips,* he should be allowed to add an expert at this late hour because it would somehow not be prejudicial to Defendants. This argument is completely ludicrous. It is unclear how Plaintiff genuinely believes that allowing him to add a previously undisclosed and un-deposed expert witness two (3) weeks before trial would not prejudice Defendants. Allowing such an addition this late in litigation would prevent Defendants from having any meaningful opportunity to vet the opinions of Plaintiff's expert and rebut same and would unquestionably amount to "trial by ambush."

WHEREFORE, Defendants CHARLES JAMSEN, M.D.; MARY BOAYUE, P.A.; and KEITH PAPENDICK, M.D., respectfully requests that this Court grant this Motion and enter an order precluding Plaintiff from presenting arguments that the lack of dressing change between April 16, 2016 and May 5, 2016, caused him to experience excessive pain and bleeding as unsupported by expert testimony.

        Respectfully submitted,
        CHAPMAN LAW GROUP

Dated: June 13, 2022      /s/Ronald W. Chapman Sr.
        Ronald W. Chapman Sr., M.P.A, LL.M. (P37603)
        Nicholas B. Pillow (P83927)
        Attorneys for Charles Jamsen, M.D.; Mary Boayue, P.A.; and Keith Papendick, M.D.
        1441 West Long Lake Rd., Suite 310
        Troy, MI 48098
        (248) 644-6326
        rchapman@chapmanlawgroup.com
        npillow@chapmanlawgroup.com

## PROOF OF SERVICE

I hereby certify that on June 13, 2022, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

        /s/Ronald W. Chapman Sr.
        Ronald W. Chapman Sr.
        1441 West Long Lake Rd., Suite 310
        Troy, MI 48098
        (248) 644-6326
        rchapman@chapmanlawgroup.com